**FILED**
**March 3, 2026**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **O.T., G.W., and S.W.**

**No. 25-353** (Greenbrier County CC-13-2024-JA-27, CC-13-2024-JA-28, and CC-13-2024-JA-29)

## MEMORANDUM DECISION

Petitioner Mother S.T.[1] appeals the Circuit Court of Greenbrier County's May 12, 2025, order terminating her parental rights to O.T., G.W., and S.W., arguing that the court erred in terminating her rights instead of continuing her post-adjudicatory improvement period or imposing a less restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In May 2024, the DHS filed an abuse and neglect petition alleging that the petitioner repeatedly exposed O.T., G.W., and S.W. to domestic violence between herself and the father of G.W. and S.W. At a June 2024 adjudicatory hearing, the petitioner stipulated to these allegations and, accordingly, the circuit court adjudicated her of abusing the children. Following a subsequent hearing, the court granted the petitioner a post-adjudicatory improvement period "for one hundred eighty (180) days" by order entered on August 21, 2024. The improvement period's terms required the petitioner to participate in domestic violence counseling, obtain appropriate housing and employment, participate in a psychological evaluation and follow the resulting recommendations, remain drug and alcohol free, randomly screen for drugs and alcohol, and participate in parenting and adult life skills classes. However, in the following months, the court received numerous reports from the multidisciplinary team ("MDT") and the Court-Appointed Special Advocate ("CASA") indicating that the petitioner was noncompliant. As such, the guardian moved to revoke the petitioner's improvement period in October 2024, which the court denied, ordering that the petitioner continue her improvement period.

The court held two dispositional hearings in April 2025. At the first hearing, the DHS presented the testimony of a service provider from Kinetic Connections, the director of Greenbrier County Day Report, and a DHS employee regarding the petitioner's noncompliance with services.

---

[1] The petitioner appears by counsel Carrie F. DeHaven. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Counsel Carin Kramer appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

The testimony indicated that the petitioner's participation in parenting classes steadily deteriorated starting in September 2024; that the petitioner was inconsistent with her required drug screenings; tested positive for alcohol, fentanyl, methamphetamine, and amphetamine in March 2025; failed to participate in her required domestic violence counselling, anger management therapy or substance abuse rehabilitation, and failed to keep in contact with the DHS, resulting in supervised visitation ending. The court also heard from the petitioner, who requested more time and acknowledged that she "wasn't really complying." The petitioner stated that she discontinued her domestic violence counseling because she "didn't really like the facility," but indicated that she was participating in in-patient substance abuse treatment at Harmony Ridge Recovery Center ("Harmony Ridge").

At the second hearing, the DHS presented the testimony of a case manager at Harmony Ridge, who testified that the petitioner had left the facility without completing the treatment program. The DHS employee then testified that the petitioner had no contact with the DHS following the prior hearing and rescinded her medical releases, which barred the DHS from obtaining any information from Harmony Ridge—including the petitioner's contact information. Following this, the petitioner testified, stating that she recently began therapy and domestic violence counselling at a new facility and participated in a psychological evaluation, but failed to maintain financial stability or begin psychological outpatient treatment as recommended in her evaluation. She also admitted that she failed to remain drug and alcohol free, missed numerous parenting and adult life skills classes, and did not remain in contact with the DHS after leaving Harmony Ridge. Regarding her treatment at Harmony Ridge, the petitioner stated that she left the facility because she "wasn't court ordered to be there," and felt she was "better and . . . fine to go home."

Although the circuit court acknowledged that the petitioner had shown minimal compliance with the terms of her improvement period "extremely late in the game," the court ultimately found that the petitioner's conduct demonstrated an unwillingness and inability to comply with rehabilitative services offered to assist her in remedying the conditions of abuse. Further, the court found that the petitioner willfully refused or was unwilling to cooperate in the development of a family case plan designed to lead to the children's return to her custody. As such, the court concluded that there was no reasonable likelihood that the conditions of abuse could be substantially corrected in the near future and that termination of the petitioner's parental rights was necessary for the children's welfare. Accordingly, the circuit court entered an order terminating her parental rights to O.T., G.W., and S.W.[3] It is from this dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that the circuit court erred in terminating her parental rights without allowing her to continue her post-

---

[3] O.T.'s father voluntarily relinquished his parental rights, and the child's permanency plan is adoption in the current placement. G.W. and S.W. were reunited with their father after he successfully completed an improvement period. The permanency plan for G.W. and S.W. is to remain in their father's custody.

2

adjudicatory improvement period, asserting that she "had further time left in her improvement period and should have been afforded all of the time available." However, as the petitioner acknowledges, the circuit court's August 2024 order granted the petitioner an improvement period of 180 days, or approximately six months. Thus, by the time of the dispositional hearings in April 2025, the improvement period had already expired by its own terms and was not, as the petitioner contends, terminated by the court. Accordingly, we conclude that the petitioner's argument on this basis is without merit.

The petitioner also argues that the circuit court erred in terminating her parental rights instead of imposing a less restrictive alternative. We disagree. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights without the use of a less restrictive alternative "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse and be substantially corrected in the near future and, when necessary for the welfare of the child." *See also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected" (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 796, 266 S.E.2d 114 (1980))). In support of her argument, the petitioner asserts that she "was following the terms and conditions of her improvement period when she was terminated . . . with a few mistakes," relying largely on her own self-serving testimony in doing so. However, the record supports the court's findings to the contrary: that the petitioner demonstrated minimal compliance in the twilight hours of the proceedings but had largely failed to avail herself and follow through with the services offered. We have explained that "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . the overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *W. Va. Dep't of Hum. Servs. v. Peggy F.*, 184 W. Va. 60, 64, 339 S.E.2d 460, 464 (1990)). These findings also support the circuit court's conclusion that there was no reasonable likelihood that the conditions of abuse could be substantially corrected in the near future. *See* W. Va. Code § 49-4-604(d)(3) (stating that "'[n]o reasonable likelihood that the conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help[,]" including circumstances where the abusing adult "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts"). Moreover, the court concluded that termination was necessary for the children's welfare, which the petitioner does not challenge on appeal. As such, we conclude that the circuit court did not err in terminating the petitioner's parental rights instead of imposing a less restrictive alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 12, 2025, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: March 3, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III